UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

UNITED STATES OF AMERICA,          :       No. 15-CR-125 (PKC)
                                        :

                    Plaintiff,     :       **ECF CASE**
                                        :

        v.                           :

CUERO et al.,                        :
                                        :

                    Defendants.   :
                                        :
                                        :
                                        :
                                        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT NESTOR MURILLO BOCANEGRA'S MEMORANDUM OF LAW IN
SUPPORT OF HIS PRE-TRIAL MOTION TO DISMISS THE INDICTMENT**

Timothy J. Treanor
Alexa Poletto
Bianca Cadena
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................2

ARGUMENT ...........................................................................................................................3

I.      PROSECUTION PURSUANT TO THE MDLEA IS UNCONSTITUTIONAL
BECAUSE THE CHARGED ACTS WERE NOT COMMITTED ON THE HIGH
SEAS AND THEREFORE ARE NOT SUBJECT TO THE JURISDICTION OF
THE UNITED STATES .................................................................................................3

II.     THE MDLEA IS UNCONSTITUTIONALLY APPLIED IN THIS CASE AND
IS A VIOLATION OF THE DEFENDANT'S FIFTH AMENDMENT RIGHT
TO DUE PROCESS .......................................................................................................5

CONCLUSION .........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*United States v. Alfonso*,
  143 F.3d 772 (2d Cir. 1998) ........................................................................5

*United States v. Ballestas*,
  795 F.3d 138 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1229, 194 L. Ed. 2d
  226 (2016) ....................................................................................................8

*United States v. Bellaizac-Hurtado*,
  700 F.3d 1245 (11th Cir. 2012) ..................................................................4

*United States v. Davis*,
  905 F.2d 245 (9th Cir.1990) ........................................................................6

*People v. Glessing*,
  206 A.D.2d 786, 615 N.Y.S.2d 115 (1994) ................................................5

*United States v. Klimavicius–Viloria*,
  144 F.3d 1249 (9th Cir.1998) ......................................................................6

*United States v. Medjuck*,
  156 F.3d 916 (9th Cir.1998) ........................................................................6

*United States v. Pinto-Mejia*,
  720 F.2d 248 (2d Cir. 1983) ........................................................................6

*United States v. Prado*,
  143 F. Supp. 3d 94 (S.D.N.Y. 2015) ...........................................................6

*Untied States v. Yousef*,
  327 F.3d 56 (2d Cir. 2003) ...............................................................4, 6, 7, 8

STATUTES

21 U.S.C. § 841 ...................................................................................................9

21 U.S.C. § 846 ...................................................................................................9

46 U.S.C. § 70503(a)(1) ...............................................................................1, 2, 3

46 U.S.C. § 70504(b)(1) ...............................................................................1, 2, 3

46 U.S.C. § 70506 .........................................................................................1, 2, 3

OTHER AUTHORITIES

33 C.F.R. § 2.32 ..................................................................................................3

Federal Rule of Criminal Procedure 12(b) .........................................................5

United States Constitution Article I, Section 8, Clause 10 ..............................3, 4

United Nations Convention on the Law of the Sea Articles 57, 86, Dec. 10, 1982,
   1833 UNTS 3 ...................................................................................................................3

Defendant Nestor Murillo Bocanegra respectfully submits this Memorandum of Law in support of his pretrial motion pursuant to Federal Rule of Criminal Procedure 12 for an Order: (1) dismissing the Indictment on the grounds of the unconstitutionality of the Maritime Drug Enforcement Laws as applied in this case, lack of jurisdiction, and denial of due process; (2) permitting Mr. Bocanegra to join in the motions of his co-defendants to the extent that they are not inconsistent with his rights and defense; (3) granting Mr. Bocanegra permission to seek further relief from this Court after receipt of any additional discovery materials, and (4) for such other and further relief as the Court deems appropriate.

## PRELIMINARY STATEMENT

The United States government does not have unbridled power to legislate against and police criminal conduct outside of its territorial boundaries; there are constitutional limits to its jurisdictional reach. The Due Process Clause prevents the United States government from prosecuting crimes outside of its jurisdiction absent a sufficient nexus, and the Constitution limits the scope of Congress' extra-territorial legislative power to discrete categories of conduct. In this action the government seeks to extend its reach and prosecute conduct that took place beyond the high seas and outside of its jurisdiction, with no demonstrable nexus to the United States. Traveling by boat from Colombia to Guatemala,[1] defendant Nestor Murillo Bocanegra, a fisherman by trade, was arrested outside of the high seas in the Colombian Exclusive Economic Zone ("EEZ"), by the Colombian Navy. Neither the boat, its cargo, nor its passengers were destined for the United States. In Indictment 15-CR-125 the government charges Mr. Bocanegra with violating the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a)(1), 70504 (b)(1), and 70506 (a). The Indictment must be dismissed because (1) the MDLEA as

---

[1] The coordinates found on the boat established that the destination was either Guatemala or El Salvador. Defendant represents that he was destined for Guatemala.

applied here is unconstitutional because the defendant's conduct did not take place "on the high seas," and (2) the government does not allege a nexus between the offense and the United States as due process requires.

## BACKGROUND

Defendant Nestor Murillo Bocanegra is a 47-year-old displaced Colombian fisherman from the coastal town of Chocó. On February 20, 2015, Bocanegra and two co-defendants, traveling in a small boat from Colombia to Guatemala, were apprehended by the Colombian Navy in the Colombian Exclusive Economic Zone ("EEZ"), 26 nautical miles[2] off the Colombian Island of Malpelo. The Colombian Navy claims to have found 350 kilograms of cocaine on the boat. The United States government does not allege that the drugs originated in, or were destined for, the United States. Mr. Bocanegra was arrested and imprisoned in Colombia.

On or about November 10, 2016, Mr. Bocanegra was extradited to the United States. He first landed at an airport in the Southern District of New York. The extradition marked Mr. Bocanegra's first time in the United States. He now finds himself without any notice or reasonable basis in a foreign country that he has never been to, or never intended to travel to, and 3,000 miles from his home and his wife and four children.

The government filed a two count indictment, 15-CR-125, charging Mr. Bocanegra with: (1) conspiracy to manufacture and distribute, and possess with intent to manufacture and distribute, a controlled substance on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), and 70506(a) and (b); and (2) possession with intent to manufacture and distribute five kilograms or more of cocaine on board

---

[2] Approximately 30 miles. The defendants were apprehended at 03 degrees, 42.2 latitude North and 81 degrees, 23.5 longitude West.

a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), and 70506(a).

## ARGUMENT

**I.** **PROSECUTION PURSUANT TO THE MDLEA IS UNCONSTITUTIONAL BECAUSE THE CHARGED ACTS WERE NOT COMMITTED ON THE HIGH SEAS AND THEREFORE ARE NOT SUBJECT TO THE JURISDICTION OF THE UNITED STATES**

The indictment must be dismissed because the charged acts did not take place within the high seas and therefore the MDLEA does not apply and its application is unconstitutional. The Constitution limits Congress' power to enact legislation circumscribing conduct that occurs beyond the confines of the United States. Article I, Section 8, Clause 10 of the United States Constitution provides Congress with the power to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." The jurisdictional reach of the MDLEA is rooted in Congress' authority to "define and punish felonies committed on the high seas." Mr. Bocanegra was not apprehended in the high seas, thus an attempt to apply the MDLEA in order to draw him before this court is unconstitutional.

The United Nations Convention on the Law of the Sea (UNCOLS) provides that the high seas are "all parts of the sea that are not included in the exclusive economic zone, in the territorial sea or in the internal waters of a State, or in the archipelagic waters of an archipelagic state." UNCOLS art. 86, Dec. 10, 1982, 1833 UNTS 3. The Federal Code provides a similar definition, noting that ". . . unless the context clearly requires otherwise . . . high seas means all waters that are not the exclusive economic zone (as defined in § 2.30), territorial sea (as defined in § 2.22), or internal waters of the United States or any other nation." 33 C.F.R. § 2.32. The exclusive economic zone ("EEZ") refers to the belt of coastal waters extending 200 nautical miles "from the baselines from which the breadth of the territorial sea is measured." UNCOLS

art. 57.  Here, Mr. Bocanegra was observed, stopped, and arrested 26 nautical miles off of the coast of Malpelo, a Colombian island, thus placing him squarely within the Colombian EEZ.

The Supreme Court has established that the Constitution narrowly confines Congress' power to legislate conduct of non-U.S. citizens beyond United States territories to three categories of conduct: piracy, felonies committed on the high seas, or offenses against the law of nations.  *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012) (interpreting Article 1, Section 8, Clause 10).  In *Bellaizac-Hurtado*, the Eleventh Circuit specifically addressed Congress' jurisdictional powers in the context of the MDLEA.  *Id*. at 1258.  There, the defendant's conduct took place entirely within Panama or its territorial waters.  The court did not find any indication of piracy, and conceded that the charged conduct did not take place within the high seas.  Left to consider whether "offences against the law of nations" encompassed drug trafficking, the court ultimately held that they did not, and that only violations of norms of international law constituted "offences against the law of nations."  *Id*.  Accordingly, the court found that Congress violated the Offences Clause in attempting to extend its legislative reach to drug trafficking in Panama's territorial waters.  *Id*.  at 1258.

The facts of this case bear striking parallels to those in *Bellaizac-Hurtado*.  Here, Mr. Bocanegra was apprehended in Colombian's EEZ, outside of the high seas.  He was not engaged in piracy, and the government has not made any allegations to the contrary.  While the Second Circuit has not explicitly opined as to whether "offenses against the law of nations," are limited to violations of norms of international law, the court has implied that only certain select acts are universally considered to be "offenses against the law of nations" including piracy, slave trade, attacks on or hijacking of aircraft, "and *perhaps* acts of terrorism."  *Untied States v. Yousef*, 327 F.3d 56, 98 (2d Cir. 2003).  Therefore because Mr. Bocanegra's conduct did not take place on

the high seas, because he did not engage in piracy, and because drug trafficking is not a violation of customary international law, the MDLEA as applied to him is unconstitutional and the indictment should be dismissed.

This motion is properly brought before this Court because a court may consider the sufficiency of the evidence before trial on a motion to dismiss when the evidence is not in dispute. *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) (finding that "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment"). Here, the government has represented that it has provided all available discovery, and this representation can therefore "fairly be described as a full proffer." *Id.* at 776. As provided by Rule 12(b) of the Federal Rules of Criminal Procedure, "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." The evidence provided by the government does not satisfy the jurisdictional requirement of the MDLEA, a matter that the Court can determine conclusively without trial. *See also, People v. Glessing*, 206 A.D.2d 786, 787, 615 N.Y.S.2d 115, 116 (1994) (explaining that "a count in an indictment may be dismissed only upon a clear showing that the evidence, unexplained and uncontradicted, would not permit a jury to convict after trial"). Thus, the indictment should be dismissed.

## II.    THE MDLEA IS UNCONSTITUTIONALLY APPLIED IN THIS CASE AND IS A VIOLATION OF THE DEFENDANT'S FIFTH AMENDMENT RIGHT TO DUE PROCESS

The prosecution of Mr. Bocanegra in the United States violates his Fifth Amendment right to due process because it is arbitrary and fundamentally unfair. The Constitution limits Congress' jurisdictional reach to legislate the conduct of non-U.S. citizens beyond its territorial

boundaries.  In order for the MDLEA to apply to Mr. Bocanegra with adequate due process, "there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair."  *Yousef*, 327 F.3d at 111 (citing *United States v. Davis,* 905 F.2d 245, 248–49 (9th Cir. 1990)).  Notwithstanding that the MDLEA specifically provides for extraterritorial application, a United States Court still must determine whether that Congressional directive would violate the due process clause of the Fifth Amendment.  *See id.* at 86 (quoting *United States v. Pinto-Mejia*, 720 F.2d 248, 259 (2d Cir. 1983)).  The Congressional finding that trafficking in controlled substances aboard vessels presents a specific threat to the security and societal well-being of the United States does not provide, on its own, a sufficient nexus between defendants and the United States, as required for extraterritorial application of the MDLEA.  *United States v. Prado*, 143 F. Supp. 3d 94, 98 (S.D.N.Y. 2015).

The Ninth Circuit analogized the nexus requirement to "'minimum contacts' in personal jurisdiction analysis," in *United States v. Zakharov*, a prosecution brought under the MDLEA. *Zakharov*, 468 F.3d 1171, 1177 (9th Cir. 2006) (citing *United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1257 (9th Cir. 1998)).  Under this standard, "[n]exus may be established by a showing that 'an attempted transaction is aimed at causing criminal acts within the United States' or that 'the plan for shipping the drugs was likely to have effects in the United States.'"  *Id.* at 1177-78 (quoting *United States v. Medjuck,* 156 F.3d 916, 919 (9th Cir. 1998)).  To make this determination, the court in *Zakharov* set forth three threshold questions:  (1) whether the markings on the drugs seized from the vessel matched markings in a database of other drugs seized in the United States; (2) whether the United States was the most likely destination for the

seized drugs; and (3) whether the vessel's location and maps (or similar items) onboard the vessel were consistent with a course bound for the United States. *Id.* at 1178.

Here, the government does not claim that markings on the seized drugs match markings in a database of other drugs seized in the United States, and neither the defendants, nor the drugs, were en route to the United States. In fact, documentation obtained from the boat, indicating the boat's origination and destination coordinates, are not consistent with a course bound for the United States. These coordinates show the route as originating in Buenaventura or Cauca, Colombia, and ending in Guatemala or El Salvador. At no point on the intended route was the vessel meant to pass through or arrive in the United States or its waters, and there is no indication that the drugs were destined for the United States. Given the answers to these three questions, it is clear that the government cannot establish a nexus between the alleged offense and the United States.

Cases in which a nexus with the United States has been established are clearly distinguished from the alleged offense. For example, in *United States v. Yousef*, the court undertook an inquiry to determine whether foreign defendants accused of conspiring to bomb U.S. airplanes outside of the United States could properly be brought to and tried in the United States pursuant to the extraterritorial application of various criminal statutes. *Yousef*, 327 F.3d. at 85. There, the Second Circuit concluded that jurisdiction over the defendants was proper because the "defendants conspired to attack a dozen United States-flag aircrafts in an effort to inflict injury on this country and its people and influence American foreign policy, and their attack on the Philippine Airlines flight was a 'test run' in furtherance of this conspiracy." *Yousef*, 327 F.3d at 112. More recently, the Court of Appeals for the District of Columbia Circuit considered whether extraterritorial application of the MDLEA's conspiracy provision violated

the Due Process Clause. *See United States v. Ballestas*, 795 F.3d 138, 141 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1229, 194 L. Ed. 2d 226 (2016). There, factual stipulations established that the drug smuggling organization transported drugs across the high seas, "*bound ultimately for the United States*." *Id.* at 148 (emphasis added). In addition, Ballestas stipulated that his coconspirators used the maps he had furnished them with to specifically avoid maritime and law enforcement authorities, "including, specifically, United States authorities." *Id.* In light of these facts, the court determined that application of the MDLEA was not arbitrary or fundamentally unfair.

In contrast to *Yousef* and *Ballestas*, the facts present in this case do not establish a nexus with the United States. Rather, they demonstrate that prosecuting Mr. Bocanegra in the United States under the MDLEA is both arbitrary and fundamentally unfair. Mr. Bocanegra was a Colombian national aboard a vessel en route to El Salvador or Guatemala. The drugs at issue were intercepted in the Colombian EEZ by the Colombian Coast Guard, and there is no evidence that the drugs or defendants were heading towards or intended for the United States. As the record demonstrates, there is not sufficient evidence in this case to create a factual connection between Mr. Bocanegra's alleged conduct in Colombia and the United States, and it is clear that Mr. Bocanegra did not have any management or operational role in the alleged operation. When Mr. Bocanegra—an indigent fisherman from a small fishing town in Colombia—was ordered to accompany the vessel at issue to Guatemala or El Salvador, he could not have reasonably anticipated being brought before a court in the United States in connection with his alleged conduct in Colombia. His detention and prosecution in the United States, thousands of miles from home and from where he was initially arrested, is fundamentally unfair and arbitrary.

Similarly, in *United States v. Lopez-Vanegas*, the Eleventh Circuit vacated the defendants' convictions under 21 U.S.C. §§ 841 and 846, where the evidence established that the defendants conspired, at times in Miami, to transport cocaine from Venezuela to France, for distribution in Europe. *Lopez-Vanegas*, 493 F.3d 1305, 1306 (11th Cir. 2007). Although the defendants conspired to commit a drug trafficking offense, the Court found that the defendants' conduct did not fall within the reach of §§ 841 and 846. By conspiring to distribute drugs *abroad*, the defendants committed, "no crime against the United States." *Id.* at 1307. Just as drug trafficking within or into another nation's borders is not an offense against the United States, drug trafficking in foreign territorial waters is not an offense against the United States. Thus, as in *Lopez-Vanegas*, the offense at issue in this case that took place in the Colombian EEZ waters was not an offense against the United States.

Accordingly, Mr. Bocanegra contends that Due Process has not been met in applying the MDLEA to his alleged conduct. His prosecution in the United States is arbitrary and fundamentally unfair because his conduct was exclusively within the sovereign country of Colombia, its territorial waters, and waters of other Latin American countries, and he has no personal contacts with the United States.

## CONCLUSION

For all the foregoing reasons, Nestor Murillo Bocanegra respectfully requests that the Court grant the relief he seeks herein.

Dated: New York, New York
       March 24, 2017

SIDLEY AUSTIN LLP

s/ Timothy J. Treanor
_____

Timothy J. Treanor
ttreanor@sidley.com
Alexa Poletto
apoletto@sidley.com
Bianca Cadena
bcadena@sidley.com
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599