HC88BOCS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    v.                      15 Cr. 125 (PKC)

5    NESTOR MURILLO BOCANEGRA,

6                    Defendant.

7    ------------------------------x

8                                     December 8, 2017
                                      1:00 p.m.
9
     Before:
10
                         HON. P. KEVIN CASTEL,
11
                                          District Judge
12
                              APPEARANCES
13
     JOON H. KIM
14        Acting United States Attorney for the
          Southern District of New York
15   SHAWN G. CROWLEY
          Assistant United States Attorney
16
     SIDLEY AUSTIN LLP
17        Attorneys for Defendant
     TIMOTHY J. TREANOR
18   ALEXA POLETTO
     BIANCA CADENA
19

20
     Also present:  DAVID MINTZ, Spanish Language Interpreter
21

22

23

24

25

HC88BOCS

1           (Case called)

2           THE DEPUTY CLERK:  For the government.

3           MS. CROWLEY:  Good afternoon, your Honor.  Shawn

4     Crowley for the government.

5           THE COURT:  Good afternoon, Ms. Crowley.

6           MR. TREANOR:  Good afternoon, your Honor.  Tim

7     Treanor, Alexa Poletto, and Bianca Cadena for the defendant,

8     Nestor Murillo Bocanegra.

9           THE COURT:  Good afternoon to you all.

10          Good afternoon, Mr. Bocanegra.

11          Mr. Treanor, the first thing I am going to do is I am

12    going to go through the materials I have and the question will

13    be whether I have everything I should have.

14          I should note at the outset that I have presided over

15    this case since filing, including the motion to dismiss and the

16    prior sentencing of a codefendant.  But specific to Mr.

17    Bocanegra, I have a presentence report, recommendation and

18    addendum, revised on November 3, 2017.  I have a memorandum

19    from Mr. Treanor with attachments that is dated November 16,

20    2017.  And I have a letter from the government, dated November

21    26, 2017.

22          Do I have everything I should have on the subject of

23    sentencing from the defendant's standpoint?

24          MR. TREANOR:  Yes, you do, your Honor.

25          THE COURT:  Has the defendant read, reviewed and

HC88BOCS

1    discussed with you the presentence report, recommendation and

2    addendum?

3            MR. TREANOR:  Yes.

4            THE COURT:  Does the defendant have any objections to

5    the facts set forth in the presentence report?

6            MR. TREANOR:  No, your Honor.

7            THE COURT:  Any objection to the guideline

8    calculation?

9            MR. TREANOR:  No, your Honor.

10           THE COURT:  Does the government agree I have

11    everything I should have on sentencing?

12           MS. CROWLEY:  Yes, your Honor.

13           THE COURT:  Does the government object to any of the

14    facts set forth in the PSR?

15           MS. CROWLEY:  No, Judge.

16           THE COURT:  Any objection to the guideline

17    calculation?

18           MS. CROWLEY:  Not from the government.

19           THE COURT:  I adopt as my findings of fact the facts

20    set forth in the presentence report; and, further, I find that

21    the guidelines were correctly calculated.

22           I will now give Mr. Treanor an opportunity to speak.

23           MR. TREANOR:  Certainly, your Honor.  And our

24    arguments in support of leniency for Mr. Bocanegra are set

25    forth pretty thoroughly in our sentencing submission, but I

HC88BOCS

1    would like to highlight for the Court a couple of matters.

2         The first is that Mr. Bocanegra is an incredibly

3    simple man.  He is a fisherman with an eighth grade education

4    from a rural, small town in Colombia.  He has worked with his

5    hands all of his life.  He has a family.  He has done things

6    like sweeping streets.  He is a fisherman.  He has done some

7    work on the docks.  But he has worked at a very low level.  He

8    had some significant injuries in the more recent years of his

9    life that limited his ability to work.  He broke his knee and

10   his right leg, tore his Achilles tendon.  Those limited his

11   ability to support his family, his children, his wife who he

12   has been together with for many years.  He had to stop work and

13   receive support from his mother.  He is very much a

14   family-focused individual and would like to, obviously, get

15   back to his family, who he believes needs him very much.

16        He is someone who clearly recognizes that he made a

17   bad decision here.  He is incredibly contrite.  From the first

18   day that I met him, Mr. Bocanegra said that he was prepared to

19   accept his punishment for what he has done.  His participation

20   I think is worth focusing on.

21        Mr. Bocanegra agreed to, in exchange for compensation,

22   participate in moving this shipment at issue in this case.  He

23   accepted some prepayment and was prepared to do what he was

24   asked to do and to ride in the boat that was carrying a

25   shipment of drugs.  He became very ill when he was waiting to

HC88BOCS

1    be told what to do and was in the hospital and had a fever.

2    When the boat was ready to go, someone came to get him to tell

3    him that the boat was ready to go.  He was fearful, because he

4    had already taken some of the payment and spent some of the

5    money, that if he did not show up, that he would have problems.

6    And so he did show up, got in the boat, proceeded to fall

7    asleep or pass out in the hold, and was in that state when the

8    Colombian police pulled over the boat and arrested him and

9    everybody.

10           I emphasize his role not because of any lesser

11    culpability.  He knows what he did was wrong.  But, really, his

12    contribution to this effort was about as minimal as possible.

13    He was out cold in the boat, not driving, not doing anything.

14    He was then taken to a Colombian prison where he was for many

15    months.  He has been in prison now for 34 months, 12 of them in

16    the United States.  He was held in Colombia under very poor

17    conditions in a very tough prison facility.  He was brought

18    here about a year ago when he was extradited here.

19           He is someone who, I think it's fair to say, did not

20    understand the gravity of his conduct or the scope of the

21    seriousness of what he was doing and the penalties that he

22    might face.  He finds himself in a prison very far from home,

23    in a country that he has never been to before.  He has left his

24    family destitute and without support.  He has basically been

25    cut off from them because he does not have the funds to pay for

HC88BOCS

the phone calls back home.  He does have a very supportive wife

and children in Colombia.  He has got physical ailments that he

has had to contend with here and has had a very difficult 34

months since he has made this mistake in his life.

As your Honor knows full well --

THE COURT:  How long was he in Colombian custody?

MR. TREANOR:  He was in Colombian custody for a total

of 22 months.

THE COURT:  OK.

MR. TREANOR:  In fact, your Honor, he was on the verge

of signing an agreement with the prosecutor in Colombia for

this conduct, and was ready to go to court, and then all of a

sudden was removed.  He did not actually enter a plea there,

but was prepared to do so, and then suddenly he was put on a

transportation vehicle and taken out of Colombia and brought

here.  His plea there probably would have negated this case and

the extradition.  I don't know if it was stopped before it

happened.  We are not aware that anyone had any focus on Mr.

Bocanegra.  The government has never told us he is a

significant individual.  In fact, our communications have

always indicated that he is, not a nobody, but a low guy in all

of this.  But he was yanked out of there and thought he had

resolved his situation.  Again, even there he was contrite and

ready to take his punishment for his actions.

I would note, as your Honor knows full well, that

HC88BOCS

1    3553(a) requires the Court to impose a sentence that is

2    sufficient but not greater than necessary to meet the

3    objectives of that section.  There have been a number of

4    defendants in these boat cases who have been sentenced,

5    including a codefendant by your Honor in this case.  Almost all

6    of them have received between 8 and 24 months.  There are some

7    exceptions, including the codefendant in this case who your

8    Honor sentenced.  I think that that individual was in an

9    entirely different situation with a prior narcotics felony in

10   the United States.  But we believe that Mr. Bocanegra should

11   not be any different from the group of other defendants who

12   have received much more lenient sentences than the guidelines

13   here, which we would submit is the applicable range.  It is the

14   range that it is under the guidelines, but in this particular

15   case, these kinds of cases, it is quite draconian.

16            THE COURT:  Thank you, Mr. Treanor.

17            Mr. Bocanegra, this is your opportunity to speak,

18   address the Court directly, to bring to my attention any facts

19   or circumstances that you believe I should take account of.  If

20   there is anything you wish to say, this is the time to say it.

21            THE DEFENDANT:  Thank you very much, your Honor, for

22   giving me this opportunity to address you today.

23            My name is Nestor Murillo Bocanegra.  I am a

24   fisherman, and I was born in the town of Choco.  I lived there

25   with my wife and four children.

HC88BOCS

1        I wrote a letter to your Honor, but because I don't

2    know the system, I wasn't able to send it to you.  That's why I

3    wrote this to say it to you.

4        I would like to tell you today that I am sincerely

5    remorseful for my actions, and I understand that having

6    participated in the transportation of drugs from Colombia to

7    Guatemala was a mistake.  I know that drugs do harm to people,

8    and I regret having gotten involved in something like this.

9        I acknowledge the gravity of my actions and the effect

10   that this type of illegal activity has on communities in

11   general.  I have experienced the negative effects of my

12   actions; not only from having lived for the last three years

13   under terrible conditions of incarceration, far from my home,

14   in a foreign country where I have never been before, but also

15   from seeing the consequences that these actions have had on my

16   family, whom I deeply love.

17       Although this is not an excuse for the decision I

18   made, when I accepted the money that I was offered for this

19   job, my family and I were going through serious economic

20   problems.  For a long time I had been suffering from the

21   effects of an injury that made it impossible for me to work

22   because I was in a wheelchair, because what I generally used to

23   do is fish and other types of manual labor.  At the time, our

24   economic situation was frequently so precarious that I didn't

25   even have money to give my children sweetened water for

HC88BOCS

1    breakfast.  It was a very difficult situation to endure.

2              My arrest has done nothing but make my family's

3    economic situation worse.  My wife has tried to cover the basic

4    necessities by working as a cook and doing laundry.  This

5    economic situation has had negative effects on my relationship

6    with her and my children.  Since my wife does not have money to

7    send me, and never has, I often have to wait months to talk to

8    my family.  My greatest regret about having committed this

9    crime is the bad example that I have given my children.

10             I understand the repercussions of my actions, and I

11   can't wait to return to my family in Colombia.  My family

12   matters to me.  They are fundamental for me and I want to be

13   with them again.  I have been in prison for 34 months, and here

14   in the United States I have no family or friends.  Since I have

15   been in jail, I have had to try to avoid many problems.

16   Despite all that, I will never again incur in this conduct, and

17   I most respectfully ask your Honor to put yourself in my place,

18   and I ask you to impose a sentence that will allow me to return

19   to my family soon.  I apologize for all the harm that I have

20   caused, and if your Honor believes that I do not deserve to be

21   released, then I will humbly accept your decision.

22             THE COURT:  Thank you, Mr. Bocanegra.

23             This is the government's opportunity to speak.

24             MS. CROWLEY:  Unless your Honor has questions, we will

25   rest on our submission.

HC88BOCS

1          THE COURT:  Thank you.

2          This is the Court's statement of reasons for the

3     sentence to be imposed on Nestor Murillo Bocanegra.

4          In sentencing Mr. Bocanegra, I have considered all of

5     the materials that I referenced at the outset, including the

6     arguments set forth in the defendant's submission.  I have

7     considered all of the factors under Section 3553(a).  Although

8     I need not recount all that I have considered, I will mention

9     some of it.

10          In connection with the defendant's actions to which he

11     has entered a plea of guilty, he participated in a conspiracy

12     which included the transportation of large quantities of

13     cocaine, and in this instance, there were 350 kilograms of

14     cocaine on board the vessel.  It was a flagless vessel and it

15     was interdicted in international waters in the East Pacific

16     Ocean.  There was no claim of registry, no flag of country.

17     And the connection between the defendants in this case and the

18     drug trafficking organization is far more direct than it is in

19     many cases, as evidenced by the fact that the drug organization

20     furnished counsel for the defendant, at its expense, in

21     Colombia, and also that the trip was partially prepaid.

22          Now, that said, I quickly distinguish -- and Mr.

23     Treanor was 100 percent correct about this -- the circumstances

24     of this defendant's actions and that of the codefendant who I

25     previously sentenced to 144 months of imprisonment.  The

HC88BOCS

1    codefendant had been arrested previously in connection with the

2    seizure of 2.8 tons of cocaine and had admitted previously

3    participating in 15 to 20 maritime drug trafficking operations,

4    and he had been convicted in a federal court and sentenced to

5    70 months.  And after he completed his sentence he returned to

6    Colombia and engaged in the same sort of conduct.  So none of

7    those circumstances apply specifically to Mr. Bocanegra.

8          I have taken into account his age, he is 47 years of

9    age, his family circumstances, which he has very eloquently

10   alluded to here today, and I have also taken into account the

11   fact of his being held in Colombian custody.

12         Ordinarily I would conclude on these facts that the

13   defendant should be sentenced to at least 40 months'

14   imprisonment, a sentence well below the advisory guideline

15   range, but the 40 months I reach is because, number one, I want

16   to avoid unwarranted sentence disparities with other defendants

17   convicted of similar crimes.  This defendant is more culpable

18   because of the more direct connection to the source of supply.

19   And in terms of general deterrence, the sentence that is

20   imposed in this case will be known to the drug traffickers who

21   sent Mr. Bocanegra on this journey of misery.

22         I am, in my conscience, required to give him credit

23   for the 22 months that he spent in Colombian custody before

24   being extradited to the United States.  So in that

25   circumstance, in giving him credit for the time he spent, it

HC88BOCS

1    seems to me that a sentence of 18 months' imprisonment, waiver

2    of the fine, imposition of the special assessment of $100 is

3    sufficient but not greater than necessary to achieve the

4    purposes of Section 3553(a).

5            And I note that the crime to which the defendant

6    entered his plea of guilty was to the substantive crime of

7    manufacturing, distributing and possessing with intent to

8    manufacture and distribute the cocaine aboard a vessel within

9    the jurisdiction of the United States.

10           Does the defendant or his counsel have any objection

11   to the Court's proposed sentence or the statement of reasons

12   for that sentence?

13           MR. TREANOR:  Your Honor, just for clarity sake, in

14   terms of the period of incarceration, that would be 18 months

15   taking into account the 22 that had already been served in

16   Colombia?

17           THE COURT:  Correct.  So what I will recite in the

18   judgment is the defendant is sentenced to 18 months'

19   imprisonment -- wait a minute.  I think I have my numbers

20   wrong.  He was in Colombian custody for how long?

21           MR. TREANOR:  22 months.  I think your Honor has the

22   numbers correct.

23           THE COURT:  I think you're right.  So I will recite

24   that the figure of 18 months' incarceration takes account of

25   the fact that he spent 22 months in Colombian custody.

HC88BOCS

1              Any objection, Mr. Treanor, to the proposed sentence?

2              MR. TREANOR:  No, your Honor.

3              THE COURT:  Same question for the government.

4              MS. CROWLEY:  No, your Honor.

5              THE COURT:  The defendant will please stand and the

6     Court will impose sentence.

7              Nestor Murillo Bocanegra, it is the judgment of this

8     Court that you are hereby remanded to the custody of the United

9     States Bureau of Prisons to be imprisoned for 18 months.

10    Following release from imprisonment, you shall be placed on

11    supervised release for a period of three years with the

12    following terms and conditions.

13             Now, I am imposing supervised release because I do not

14    have confidence in what the position of the United States will

15    be on the subject of deportation.  So, therefore, I am imposing

16    supervised release of three years.

17             During that period of supervised release, you shall

18    not commit another federal, state or local crime, or illegally

19    possess a controlled substance.

20             You must refrain from any use of a controlled

21    substance.

22             You must cooperate in the collection of DNA.

23             The standard conditions of supervision 1 through 13

24    are imposed.

25             You must obey with the immigration laws and comply

HC88BOCS

1   with the directives of immigration authorities.

2          As I said, based on limited assets, limited earning

3   ability, the fine is waived, and the $100 special assessment is

4   imposed.

5          Mr. Bocanegra, you have the right to appeal the

6   sentence I have imposed.  If you cannot afford the cost of an

7   appeal, you may apply for leave to appeal as a poor person.

8   The time limits for filing a notice of appeal are brief and

9   they are strictly enforced.  If you request, the clerk of court

10  will prepare and file a notice of appeal on your behalf

11  immediately.

12         Do you understand all that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Anything further from the government?

15         MS. CROWLEY:  Yes, your Honor.  The government moves

16  to dismiss all open counts that remain with respect to this

17  defendant.

18         THE COURT:  Without objection, that's granted.

19         Anything further, Mr. Treanor?

20         MR. TREANOR:  No, your Honor.

21         THE COURT:  Thank you all very much.

22                              oOo

23

24

25